UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

-vs-

Case No. 09-13116
HON. AVERN COHN

DECKER TRANSPORT COMPANY, INC.

    Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a pregnancy discrimination case under Title VII of the Civil Rights Act of 1964 in which plaintiff Equal Employment Opportunity Commission (EEOC) claims that defendant Decker Transport Company, Inc. (Decker), a truckload carrier and former employer of Anita Pilette-Phillips (Phillips), terminated Phillips because she was pregnant. Decker responds that Phillips was terminated because she violated a nondiscriminatory company policy when she drove the cab (truck) of a company tractor-trailer without authorization.

On September 17, 2007, Phillips filed a charge of discrimination with the EEOC against Decker. (Doc. 19-17). On August 7, 2009, the EEOC filed a complaint in one count against Decker on behalf of Phillips, claiming that Decker violated Title VII by discriminating against her on the basis of sex and pregnancy. (Doc. 1).

Now before the Court is Decker's motion for summary judgment. For the reasons

that follow, Decker's motion will be granted. Further, in a separate motion, Decker also asks the Court to accept a list of specified facts as true in a motion styled Defendant's Motion to Strike Plaintiff's Improper And Unsupported Responses to Defendant's Statement of Undisputed Material Facts, (Doc. 28), because it generally says the EEOC's answer of "neither admitted or denied" to the facts is insufficient under Fed. R. Civ. P. 56(e). The Court finds the motion moot due to the outcome of the present motion. Thus, it is DISMISSED.

## II. FACTS

The pertinent facts as the Court understands them from the parties' papers are as follows.

### A. Background

Phillips began working at Decker as an "over-the-road" long haul semi-truck driver on July 27, 2006, after receiving her commercial driver's license earlier in the summer. Phillips' training included a three day orientation program at a Decker facility in New Jersey where she was given a driver's manual that included Decker's policies and procedures.

Particularly, Decker's internal medical clearance policy is in the driver's manual and states in pertinent part:

> Per Company policy, illness or injury needs to be reported to the Medical Compliance Department. If a driver seeks medical treatment through a licensed health care facility or medical provider, he or she will need to be cleared through the Medical Compliance Department prior to getting back on the truck. This protocol has been established to ensure the safety of our drivers, the welfare of the public in general and compliance with [Department of Transportation (DOT) guidelines and internal criteria of the Medical Compliance Department. Prescription drugs must be reported to the Medical Compliance Department before being allowed on the truck to ensure DOT compliance.

(Doc. 19-3, p. 27).

According to Decker, when a driver seeks treatment from a medical provider, the Medical Compliance Department (MCD) places the driver on a medical hold and the driver is no longer authorized to drive his or her tractor-trailer until such time that MCD, and MCD only, releases the hold. In order to determine whether a medical hold should be released the MCD generally requests written documentation from the driver's treating physician as to the reason for the visit, whether any drugs were prescribed, and whether the driver is fit to return to work. At the point that MCD feels that the driver is compliant with its and DOT policies, MCD clears the medical hold and the driver is again authorized to drive.

Decker's discipline policy, also printed in its Driver's Manual, states "[d]rivers shall not operate . . . equipment . . . without proper authority." (Doc. 19-3, p. 12). The policy also states that violation of this rule is a ground for "disciplinary action ranging from reprimand to automatic termination, depending on the seriousness of the matter." (Id.).

Finally, Decker's equal opportunity and anti-discrimination policies prohibit discrimination on the basis of sex or any other protected class. (Id. at 10).

### B. Medical Hold

On April 27, 2007, Phillips was feeling nauseous and suffering from stomach cramps while driving back to Michigan in her tractor-trailer. Deciding she needed to see a doctor, she coordinated some time off with her Decker dispatcher, which involved: picking up a load outside of Michigan, driving it to Michigan for the weekend, and delivering it to its Michigan destination by May 1, 2007.

On April 30, 2007, Phillips saw a doctor at Planned Parenthood where she learned that she was pregnant and was told to go to an Emergency Room (ER) due to concern of

3

a tubal pregnancy, which she did. After being discharged from the ER, Phillips says she informed Decker Safety Trainer Carl Russell (Russell) that "[she] was four months pregnant, [and] that [she] could still work for another three or four months or until [she] felt unable to work." (Doc. 19-2 p. 66). Russell replied that whether she was cleared to work was "up to Medical," and that she should sit idle in the tractor-trailer until "Medical" called. (Id. at 67).

At some point on April, 30, 2007 or May 1, 2007, Phillips was placed on a medical hold by Medical Compliance Department Manager Janice Brown (Brown) who also told Phillips that being on a medical hold meant that she could not drive the tractor-trailer. Phillips says that during their conversation, Brown also told her that there was no need for her to provide ER discharge papers, and that she could have her job back if she "got rid of [her] problem." (Id. at 73). She says she then called Russell back and told him that if the problem was "getting rid of her child" she was not going to do it. (Id. at 75). Brown, however, denies making the statement. Rather, Brown says that after Phillips went to the ER she told Phillips that she was unable to clear her to drive the tractor-trailer because of the "problems" Phillips was having with her pregnancy, referring to the cramping and possibility of a tubal pregnancy. (Doc. 19-7 pp.186-87, 194)

Phillips also spoke with Safety Manager Patricia Smith (Smith), who told her that she was not authorized to drive the tractor-trailer until she was cleared by the Medical Compliance Department. Alternatively, she was offered a bus ticket home, which Phillips refused.

## C. Policy Violation

On May 1, 2007, still on a medical hold, Phillips says she told a Decker dispatcher,

Eileena Bennett (Bennett), that she needed to go home to Flint, Michigan. According to Phillips, Bennett replied that she should "get to where [she] had to go" and that she should let her know the location of the truck as quickly as possible, (Id. at 82), which Phillips interpreted as receiving authorization. Bennett, on the other hand, says that she "freed [Phillips] off the truck," i.e., freed her to leave it so that she could return home. (Doc. 23-7 p. 171) (emphasis added).[1]

At that point, Phillips disconnected the truck from the trailer and drove it from the Detroit area to Flint, leaving the trailer in Detroit. She says that she spoke to Bennett approximately halfway into her drive and then again when she arrived.

In the meantime, because Phillips was on a medical hold and unable to drive, Decker sent another driver, Ray Snapp (Snapp), to pick up the tractor-trailer in Detroit. After arriving in Detroit to find the trailer but no truck, Snapp located and recovered the truck in Flint. He then drove it back to Detroit to recover the trailer.

### D. Termination

The next day, May 2, 2007, Phillips was terminated. According to Decker, Phillips called Smith and admitted to her that she had driven the truck to Flint. Smith then told Phillips over the phone that she was terminated for doing so without authorization while on a medical hold. According to Smith, she alone made the termination decision because Phillips made the decision to drive to Flint without any consideration of Decker's policy or the liability consequences of her decision. (Doc. 19-9 p. 110-12). Instead, Smith says

---

[1] Bennett's recollection is also supported by a message sent through Decker's electronic messaging service. (Id.).

5

"Phillips was concerned with herself," and "irresponsibly took the truck . . . costing [Decker] money for fuel [and] putting liability on the company should an accident have occurred." (Id.).

According to the EEOC, Phillips says that she was informed of her termination by someone by the name of Jimmy; she also denies having a conversation with Smith as described above. However, the EEOC states in its brief that Smith was responsible for terminating Phillips, (Doc. 23, p. 15, "On May 2, Smith terminated Phillips for driving the truck home unauthorized"), while making no further mention of "Jimmy" in the brief or record. Further, the EEOC stated in a February 10, 2011, motion hearing that it does not dispute the fact that Smith terminated Phillips. Thus, for the purpose of this motion, Smith is deemed to have terminated Phillips.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when, 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 475-76 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). However, the non-moving party must present some evidence to show a genuine issue for trial exists. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 476 (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted).

6

## IV. ANALYSIS

Under the Pregnancy Discrimination Act provisions of Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited. Tysinger v. Police Dept. of City of Zanesville, 463 F.3d 569, 572 (6th Cir. 2006); 42 U.S.C. § 2000e(k). Women who are affected by pregnancy, childbirth or related medical conditions are required to be treated the same, for all employment purposes, as other persons not so affected but who are similar in their ability or inability to work. Id.

### A.

The EEOC's claim is based on circumstantial evidence, which requires analysis under the McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973), burden-shifting evidentiary framework. Accordingly, to sustain its claim, the EEOC must first satisfy the elements of a prima facie case by showing that Phillips was: (1) pregnant, (2) qualified for her job, (3) subjected to an adverse employment decision, and that (4) there is a nexus between her pregnancy and the adverse employment decision." Id. (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir.2000)).

Decker does not argue in its motion for summary judgment that the EEOC has not established a prima facie case of discrimination. Rather, Decker focuses on the next phase of analysis under McDonnell Douglas. Likewise, assuming the EEOC has established a prima facie case, the burden of production shifts to Decker to articulate a legitimate nondiscriminatory reason for terminating Phillips. Tysinger, supra, at 576 (citing Cline, supra, at 658). If Decker satisfies this burden, the EEOC must rebut Decker's reason by showing that it is not credible and is a mere pretext for discrimination. Id.

To demonstrate pretext, the EEOC must show that Decker's reason (1) has no basis in fact, (2) did not actually motivate Phillips' termination, or (3) was insufficient to warrant Phillips' termination. Tysinger, supra (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)).

B.

Decker says that it terminated Phillips because she violated a legitimate nondiscriminatory policy when she drove the truck to Flint while on a medical hold; a policy that Phillips had notice of in Decker's driver's manual and a medical hold she was told about on three occasions after going to the ER. The EEOC says it can rebut Decker's reason by showing it is pretextual under each of the three methods described above, as follows.

1.

First, the EEOC says that Decker's reason is pretextual because there is a question as to whether the policy exists in practice, i.e., whether it has any basis in fact. In support, it cites another case being litigated in this district involving its parent company P.A.M. Transport (PAM), EEOC v. P.A.M. Transport, Inc., 09-13851, in which a statement was made indicating that Decker allows drivers to drive home after being placed on a medical hold depending on the medical condition and if the driver is a short distance from home or the nearest medical terminal. Decker responds that this statement does not contradict its policy or reason and clarifies that in the same case another statement was made that drivers may not drive while on a medical hold and may resume driving when the medical hold is resolved.

The statements taken in context do not show that Decker's policy has no basis in

fact. Further, Phillips' set of facts is distinguishable because she did not have a short distance to drive. Rather, she drove from the Detroit area to Flint, approximately 65 miles. Finally, the policy itself is published in Decker's driver's manual, which is given to all new Decker employees, and was given to Phillips, during orientation. Thus, this argument lacks merit.

2.

The EEOC next argues that Decker's reason is insufficient because other non-pregnant employees were treated more favorably, i.e., not terminated, after also violating the policy. For example, it says that one employee was allowed to drive despite the fact that he reported to the MCD that he might have a kidney infection. The EEOC says another employee was also allowed to drive after receiving medical treatment on his thumb. Decker responds that these two employees were never placed on a medical hold. Thus, it says that the EEOC's argument is inapposite to the present case. Decker is correct. The fact that Decker did not enforce its medical hold policy on two employees that according to the record were not on a medical hold is immaterial to the present case.

On a similar ground, the EEOC argues that a non-pregnant employee was not terminated for similar conduct when he drove while on a medical hold because of high blood pressure. Decker responds that Smith was not responsible for the decision not to terminate this employee, nor is there any evidence of anyone in an operations role similar to Smith's who was aware of this employee's medical hold and chose not to terminate him. Decker also provides the names of two non-pregnant employees who were fired for driving while on a medical hold.

Indeed, to successfully argue discrimination because other "similarly situated"

9

employees were treated more favorably, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992). Thus, the EEOC's fails to prove that Decker's reason for terminating is pretextual.

3.

Finally, the EEOC argues on three grounds that Decker's stated policy violation is not what actually motivated Phillips' termination, as follows.

i.

First, the EEOC says that says the termination was motivated by Decker's unwritten discriminatory pregnancy policies. In support, the EEOC raises the fact that Phillips was required to have a physician sign off on her job description before she could be cleared from the medical hold, a requirement it says is not imposed on non-pregnant employees. The EEOC also relies on a statement made by Kathy McCarty (McCarty), a medical compliance clerk in the MCD, that pregnant drivers are not allowed at Decker.

In response, Decker disputes that it has a policy of "no pregnant drivers" by providing McCarty's full statement in context, which includes a clarification that her supervisor told her that pregnant drivers could not drive unless they had medical clearance and, also, that pregnant drivers had to follow the medical hold policy and would be placed on hold until physician and MCD clearance. Decker further responds that its requirement for a physician's job description sign off is consistent with its policy requiring treating physician documentation as to a driver's ability to return to work after being placed on a medical hold. Thus, it says that the EEOC has failed to proffer evidence of discrimination on this ground.

Decker is correct. Neither McCarty's statement taken in context nor the fact that Phillips was required to have a physician sign off on her job description prove that Decker's actual motivation for terminating Phillips was due to her pregnancy.

ii.

Next, the EEOC claims that, because Phillips had authorization from Bennett to drive to Flint, a policy violation never occurred. Thus, it says that Phillips' pregnancy, not the policy violation, is the actual motivation behind the termination. Decker responds that, Bennett's authorization aside, there is no discrimination here because Smith terminated Phillips with an honest belief that Phillips violated the policy, which under Majewski v. Auto Data Processing, Inc., 274 F.3d 1106 (6th Cir. 2001), is enough to defeat an employee's evidence of pretext even if an employer's stated reason proves to be incorrect later. Id. at 1117 (holding that an employee's assertion alone is insufficient to rebut an employer's "honest belief" termination reason under the Sixth Circuit's rule, which states that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect later").

Further, Decker asserts Phillips should have known that Bennett did not have authority to clear her to drive the truck, especially after Brown, Russell and Smith told her that she could not move the tractor-trailer and offered her an alternate way home, which Phillips refused. Again, however, Decker says that despite Bennett's alleged authorization, there is still no evidence of pregnancy discrimination because Smith, not Bennett, was responsible for terminating Phillips. Decker is correct.

Outside of Phillips' assertions, there is no evidence that Smith was aware of

11

Bennett's authorization, or that Bennett even gave the authorization. Thus, without more, the argument lacks merit. The EEOC attempts to cast doubt as to what Smith knew when she terminated Phillips using a memorandum written by Smith after Phillips filed the discrimination charge with the EEOC. (Doc. 23-21). However, the EEOC's argument reveals only that Smith's recollection of events as to the timing of when Phillips was placed on a medical hold and when and if Phillips spoke to Bennett may be inaccurate. In other words, the EEOC does not proffer any evidence that Smith terminated Phillips for being pregnant. Accordingly, the EEOC's argument does not establish pretext on this ground.

### iii.

Lastly, the EEOC says that Brown's statement that Phillips had 90 days to get rid of her "problem" shows Decker's actual motivation for terminating her. Relying on Phelps v. Yale Sec., Inc., 986 F.2d 1020 (6th Cir. 1993), Decker says that, even if true, any statement made by Brown, who was not involved in Phillips' termination, is too isolated and ambiguous to establish discriminatory intent. Id. at 1025-26 (finding "isolated and ambiguous comments" to be "too abstract" to show discriminatory pretext when the statements occurred over a year ago and were too ambiguous to establish discrimination).

As an initial matter, there is no evidence, other than Phillips' assertion, that Brown made the statement. On that ground alone, without more, the EEOC's argument lacks merit to survive summary judgment. Further, even if true, there is no evidence that the statement had any relation to Smith's decision. It is also unclear from the record exactly how to interpret Brown's statement. Accordingly, even if true, the statement is too isolated and ambiguous to rebut Decker's reason for termination.

Moreover, "statements by non-decision makers, or statements by decision makers

12

unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus." Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 551-52) (quoting Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998; Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)). In sum, the statement is not enough to prove that Phillips was terminated because of her pregnancy.

## V. CONCLUSION

Thus, for the above reasons, Decker's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: February 25, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 25, 2011, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160