UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

                                         Case No. 09-13116

-vs-                                    HON. AVERN COHN

DECKER TRANSPORT COMPANY, INC.,

       Defendant.

_____/

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

I.

This is a pregnancy discrimination case under Title VII of the Civil Rights Act of 1964 in which plaintiff Equal Employment Opportunity Commission (EEOC) claims that defendant Decker Transport Company, Inc. (Decker), a truckload carrier and former employer of Anita Pilette-Phillips (Phillips), terminated Phillips because she was pregnant. Decker responds that Phillips was terminated because she violated a nondiscriminatory company policy when she drove the cab of a company tractor-trailer without authorization.[1] Decker filed a motion for summary judgment. (Doc. 19). The Court granted the motion and dismissed the case. (Doc. 39).

Before the Court is EEOC's motion for reconsideration. (Doc. 43). Decker has responded. (Doc. 45). For the reasons that follow, the motion is DENIED.

---

[1]The full background of the case is set forth in the Memorandum and Order Granting Defendant's Motion for Summary Judgment. (Doc. 39).

II.

E.D. Mich. LR 7.1(h) governs motions for reconsideration, providing in relevant

part:

> Generally, and without restricting the court's discretion, the court will not
> grant motions for rehearing or reconsideration that merely present the
> same issues ruled upon by the court, either expressly or by implication.
> The movant must not only demonstrate a palpable defect by which the
> court and the parties have been misled but also show that correcting the
> defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h).

III.

The EEOC does not proffer direct evidence of pregnancy discrimination.  Thus, the

Court applied the McDonnell Douglas framework.  White v. Baxter Healthcare Corp., 533

F.3d 381, 391 (6th Cir. 2008)("Absent direct evidence of discrimination, claims brought

pursuant to Title VII's antidiscrimination provision [is] subject to the tripartite burden-shifting

framework first announced by the Supreme Court in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973), and subsequently modified in Texas Dept. of Comm. Affairs v.

Burdine, 450 U.S. 248 (1981).").  Decker did not challenge whether the EEOC set forth a

prima facie case of pregnancy discrimination.  Rather, it argued that it had a legitimate

reason for terminating Phillips: she drove the cab of her Decker tractor-trailer without

authorization while on a medical hold, in violation of a Decker policy.  See id. at 391 ("Once

the plaintiff establishes this prima facie case, the burden shifts to the defendant to offer

evidence of a legitimate, non-discriminatory reason for the adverse employment action.").

The burden then shifted to the EEOC to show that Decker's reason was pretext.  See id.

at 391-92 ("the plaintiff [must] show that the defendant's proffered reason was not its true

2

reason, but merely a pretext for discrimination"). Particularly, the EEOC's burden was to produce "enough evidence to convince a reasonable jury that [Decker's] proffered reasons for [terminating Phillips] may have been a mere pretext for [pregnancy] discrimination. <u>Id.</u> at 395; <u>see also id.</u> at 392 ("Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."); <u>see also</u> <u>Burdine</u>, 450 U.S. at 256.

IV.

The EEOC argues that it produced sufficient evidence to rebut Decker's legitimate termination reason. Accordingly, it says that the Court should have denied Decker's summary judgment motion. The standard for granting summary judgment is as follows. Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

In deciding upon a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. <u>See id.</u> Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. <u>Muhammad v. Close</u>, 379 F.3d 413, 416 (6th Cir. 2004). However, the nonmoving party may not rest upon his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to

3

show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993);  see Anderson, 477 U.S. at 249–50.

V.

A.

First, the EEOC argues on several grounds that the Court erred in not finding that Decker subjected Phillips to a discriminatory pregnancy policy, which it says proves Decker's legitimate termination reason is pretext.

i.

The EEOC suggests that the Court should have found that Decker treated Phillips differently than other non-pregnant employees based on evidence that a physician's letter from the Emergency Room was not sufficient to clear her from a medical hold.  The argument lacks merit.

The Court considered the physician's letter, which discharged Phillips and describes that she was given a prescription for Keflex, for a urinary tract infection, and that she should follow up with her OB/GYN.  (Doc. 23-34, p. 4).  The Court also considered Decker's medical clearance policy, which states that all drivers who "seek[] medical treatment through a licensed health care facility or medical provider . . . will need to be cleared through the Medical Compliance Department (MCD) prior to getting back on the truck," (Doc. 23-14), and which gives the MCD discretion about when to clear drivers based on such factors as: written documentation from the driver's treating physician as to the reason

4

for the visit, whether any drugs were prescribed, and whether the driver is fit to return to work. Finally, the Court considered the following testimony proffered by the EEOC: Medical Compliance Department Manager Janice Brown (Brown) said that a physician's letter is required for pregnant drivers, but also testified to the EEOC's attorney in the same line of questioning that while the physician's letter is not required under the written policy, one is "required" of all drivers. (Doc. 23-12, pp. 112, 125, 127); Risk Manager Anthony Longiotti (Longiotti) said that for all drivers Decker follows more stringent medical clearance policies than the Department of Transportation (DOT), out of a concern for driver and public safety. (Doc. 23-11, pp. 84-88). Related to pregnant drivers, Longiotti also said that a physician's letter is required in order to confirm that the driver is able to meet the "fairly heavy manual labor" required to drive a tractor-trailer. (Id. at 92). Longiotti said that whether a driver who found out she was pregnant would be placed on medical hold during the time she was waiting for a physician's letter would depend on whether she was having problems and how far in the future the driver's next doctor's appointment was. (Id.).

Overall, the EEOC has failed to produce evidence such that a reasonable jury would conclude that Decker's medical clearance policy is discriminatory toward pregnant women, and that it was the actual motivation for Phillips termination. Viewing the evidence in a light most favorable to the EEOC, the evidence produced demonstrates that Decker has stringent medical clearance policies in general, and that a pregnant driver may be placed on medical hold while waiting for a physician's letter if she has a more serious medical condition, like in the case of Phillips who was concerned that she had a tubal pregnancy, which prompted her to visit the Emergency Room.

5

ii.

The EEOC next suggests that the Court improperly accepted Decker's assertions that a "no pregnant drivers" policy does not exist when it should have viewed drawn all inferences in favor of the EEOC, the non-moving party.  In support, the EEOC relies primarily on testimony from Phillips that Brown told her because she was "an insurance risk" she had "30 days to get rid of [her] problem" at which time she could be working again.  (Doc. 23-3, pp. 73, 82).  The EEOC argues that this testimony, which Phillips interprets as meaning that Phillips had 30 days to get rid of the pregnancy in order to return to work, demonstrates Smith's discriminatory animus toward Phillips.  The EEOC's proposed inference was and is not reasonable.  See Matsushita, supra, at 587.

Particularly, the EEOC's proffered testimony of Brown describes that she discussed with Phillips the need for her to follow-up with her physician so that the physician could sign off on her job responsibilities at which time she could return to work.  (Doc. 23-12, p. 165).  The EEOC did not proffer testimony of Brown relating to Phillips' allegation that Brown told her she had 30 days to get rid of her problem.  In response to Decker's questioning relating to the alleged statement, however, Brown described that after Phillips went to the Emergency Room she told Phillips that she was unable to clear her to drive the cab because of the "problems" Phillips described as having relating to her pregnancy, referring to the cramping and possibility of a tubal pregnancy.  (Doc. 19-7, pp.186-87).  Brown stated that she was not more specific in the documentation of Phillips' "problems" because Phillips would not give her any definite [sic] [as to] what the ER doctor told her."  (Id. at 187).  Further, Brown said that Phillips would not "disclose if medications were given to her," "confirm if it was a tubal pregnancy" or if "she was in the process of miscarriage."  (Id.

6

at 187).

Overall, then, viewing all reasonable inferences in favor of the EEOC, the Court found that a reasonable jury would not have been able to find that Decker had a "no pregnant drivers" policy.  That is, a reasonable jury, after hearing Phillips and Brown's testimony, would not be able to find that a discriminatory pregnancy policy was the actual motivation for Phillips termination in order to rebut Decker's legitimate reason for termination.

The EEOC has failed to proffer additional evidence in the present motion for reconsideration.  Accordingly, the Court's finding stands.

B.

The EEOC next argues that the Court erred in finding that the EEOC failed to proffer sufficient evidence that Safety Manager Patricia Smith (Smith) terminated Phillips for being pregnant.  Particularly, the EEOC sets forth several grounds on which it argues that sufficient evidence was produced showing discriminatory animus on the part of Smith, or someone that she relied on in deciding to terminate Phillips, which it says rebuts Decker's legitimate termination reason.

i.

First, the EEOC suggests that, under White, supra, at 401, the Court should have found sufficient evidence of a discriminatory animus because Smith relied on information from the MCD when she terminated Phillips.  Particularly, the EEOC says that the fact that Smith relied on information from the MCD, the department that, according to the EEOC, applies discriminatory policies, proves that Smith, too, discriminated against Phillips.

As an initial matter, the EEOC's reliance on White is misplaced because the

7

language it relies on, that a "plaintiff is not required to eliminate or rebut all the possible legitimate motivations of the defendant as long as the plaintiff can demonstrate that an illegitimate discriminatory animus factored into the defendant's decision to take the adverse employment action," applies to mixed motive Title VII cases: this is a single motive Title VII case, to which, as stated, the McDonnell Douglas burden shifting framework applies. White, supra, at 401 (holding that the McDonnell Douglas framework does not apply to mixed-motive Title VII cases; also describing that in single motive cases "the pretext requirement is designed to test whether the defendant's allegedly legitimate reason was the real motivation for its action").

That aside, as stated in the previous section above, the EEOC has failed to proffer sufficient evidence to show that Decker has a discriminatory pregnancy policy. Thus, the argument that the Court should have found a discriminatory animus on the part of Smith because she relied on information from the MCD, without more, lacks merit.

ii.

Next, the EEOC suggest that under Automobile Workers v. Johnson Controls, 499 U.S. 187 (1991), testimony by Smith proves her discriminatory animus. Particularly, the EEOC characterizes a portion of Smith's testimony as proving that she terminated Phillips because she believed that Phillips' pregnancy and possible harm to the fetus placed Decker in jeopardy. The argument is not persuasive.

In Johnson Controls, the policy at issue prevented fertile women from working in jobs involving lead exposure. Id. at 197. Here, however, the EEOC has not proffered evidence that pregnant women are not permitted to continue driving. Rather, viewing the evidence in a light most favorable to the EEOC, the evidence shows that Decker's medical clearance

8

policy may require pregnant drivers to be placed on a medical hold, like Phillips was when she went to the ER for fear of a tubal pregnancy, until such time that a physician signs off on their job responsibilities.  In other words, the EEOC has not produced evidence to show that Decker's policy prevented Smith from driving completely, like in Johnson Controls. Thus, the case is inapposite.

Moreover, the EEOC mischaracterizes Smith's statement.  When describing the situation in which Phillips was terminated, Smith testified, "I based my decision on the fact that she irresponsibly took the truck . . . costing [Decker] money for fuel [and] putting liability on the company should an accident have occurred,"  (Doc. 19-9, pp. 110-13). When then asked by EEOC's counsel whether possible injury to the baby would be a reason to not allow her to drive, Smith replied, "No, I don't think so but again, that would be up to a doctor to say."  (Id.).

In light of the described testimony, the reasonable inference is that Smith was stating her rationale for terminating Phillips for violating Decker's medical hold policy, not that Phillips' pregnancy alone placed Decker at risk.  Thus, the EEOC's argument lacks merit.[2]

iii.

The EEOC further argues that the Court erred in not finding that Smith had a discriminatory animus because she relied on comments by Brown in deciding to terminate

---

[2]The EEOC also argues that reconsideration is warranted on the ground that the Court improperly drew inferences of fact relating to whether Smith spoke with Phillips on May 2, 2007.  The date on which Smith and Phillips spoke is immaterial.  Moreover, Smith did not terminate Phillips based on this conversation, nor did the Court make this finding in its decision, as the EEOC asserts.  Thus, the argument lacks merit.

9

Phillips.  Particularly, the EEOC again relies on Phillips' assertion that Brown told her she had 30 days to get rid of her problem.  In support of its argument, the EEOC cites Staub v. Proctor Hospital, __ U.S. __, 131 S.Ct. 1186 (2011).  However, Staub is distinguishable from the present facts because it involves a case in which a plaintiff proffered evidence that non-terminating supervisors intentionally made a false accusation against him which ultimately led to his termination.  Id. at 1189 ("[A supervisor] informed [the terminating supervisor] that [plaintiff] had left his desk without informing a supervisor," in violation of a corrective action plan).  Here, viewing the evidence in a light most favorable to the EEOC, Smith knew of a conversation between Brown and Phillips, including the alleged statements made by Brown.  Still, there is no evidence that Brown made intentional false statements to Smith in an attempt to have Phillips terminated.  Accordingly, Staub is not instructive to prove that Smith had a discriminatory animus.

Further, as the Court stated in its summary judgment decision, there is no evidence, other than Phillips' assertion, that Brown made the statement.  Without more, the EEOC's argument lacks merit to survive summary judgment.  Moreover, even assuming the statement was true, it is too isolated and ambiguous to establish discriminatory animus.  See Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025-26 (6th Cir. 1993) (finding "isolated and ambiguous comments" to be "too abstract" to show discriminatory pretext when the statements occurred over a year ago and were too ambiguous to establish discrimination).  Thus, the EEOC's argument lacks merit on this ground.[3]

---

[3]The EEOC, through a supplemental filing to support is motion for reconsideration, (Doc. 46), also presents evidence that Brown falsely reported under oath that she has never been convicted of a crime, when, as the EEOC discovered, Brown was convicted of a felony theft crime, which took place in 1993.  The EEOC

iv.

Third, the EEOC argues that the Court erred in not finding a genuine issue of material fact relating to Smith's motive in terminating Phillips on the ground that Phillips had authorization from Decker dispatcher Eileen Bennett (Bennett) to drive the cab.  That is, Phillips says she did not violate the Decker policy and asserts that Smith knew of the authorization but fired Phillips anyway because she was pregnant.  In support, the EEOC proffered Phillips' testimony which describes that Bennett told her to "get to where [she] had to go" and that she should let her know the location of the cab as quickly as possible.  (Id. at 82).  Bennett, on the other hand, says that she "freed [Phillips] off the truck," i.e., freed her to leave it so that she could return home.  (Doc. 23-7, p. 171) (emphasis added).[4] Outside of Phillips' assertion, the EEOC did not proffer additional evidence in support of the theory that Phillips had authorization to drive the cab home.  Thus, the Court found that, without more, the EEOC did not create a genuine issue of material fact as to Smith's motive so as to rebut Decker's legitimate reason as pretext.  The EEOC fails to offer new evidence in its present motion.  Thus, the argument lacks merit.[5]

---

argues that based on this information there is a genuine issue of material fact as to Brown's credibility, which should be decided by a jury and not the Court.  The EEOC's argument does not persuade the Court: the evidence was discovered during an unrelated case; the theft conviction is unrelated to the employment discrimination at issue; and the conviction is nearly 20 years old.  In other words, the evidence is not germane to the present matter.  Moreover, the Court did not rely solely on Brown's testimony in its decision.  Accordingly, reconsideration on this ground is not warranted.

[4]Bennett's recollection is also supported by a message sent through Decker's electronic messaging service.  (Id.).

[5]The EEOC further asserts that the Court drew an improper inference in favor of Decker when, according to the EEOC, the Court stated that Decker was correct in its

C.

Finally, the EEOC argues that the Court incorrectly applied the "same supervisor" test under Mitchell v. Toledo Hosp., 964 F.2d 577 (6th Cir. 1992) when it found that Phillips' co-worker Bradley C. was not similarly situated.  In support of its argument, the EEOC relies on Ensley-Gaines v. Runyon, 10 F.3d 1220 (6th Cir. 1996), for the proposition that the test does not apply to cases involving pregnancy discrimination.  Id. at 1226.  The EEOC next proffers Bradley C.'s "medical history notes" from Decker to again argue that he is similarly situated to Phillips.  Particularly, the medical notes describe that a doctor contacted Decker regarding Bradley C. after a physical revealed that he had high blood pressure.  (Doc. 23-27).  Decker told the doctor to have Bradley C. call in so that they would "know what was going on when he went to the Dr." (Id.).  Based on the medical history comments, Bradley C. did not call in.  Instead, he drove home approximately 60 miles.  (Id.).  The EEOC argues that because he was not terminated for driving home, and Phillips was, there is sufficient evidence to rebut Decker's legitimate termination reason.

As an initial matter, Ensley, supra, indeed holds that under the Pregnancy Discrimination Act a plaintiff alleging discrimination need not meet the Mitchell same

---

finding that "Phillips should have known that Bennett did not have authority to clear her to drive the truck." (Doc. 43, p. 8).  The EEOC's argument mischaracterizes the Court's finding.  The Court's statement, in its entirety, reads: "Further, Decker asserts Phillips should have known that Bennett did not have authority to clear her to drive the truck, especially after Brown, Russell and Smith told her that she could not move the tractor-trailer and offered her an alternate way home, which Phillips refused.  Again, however, Decker says that despite Bennett's alleged authorization, there is still no evidence of pregnancy discrimination because Smith, not Bennett, was responsible for terminating Phillips.  Decker is correct." (Doc. 39, p. 11).  The Court did not make the described inference in favor of Decker.  The EEOC's argument lacks merit, and is not well-taken.

supervisor test to establish a prima facie case of pregnancy discrimination.  Id. at 1226. However, Ensley also holds that its "ruling does not alter the plaintiff's burden in rebutting any legitimate, nondiscriminatory reasons which may be offered by the defendant for its employment actions." Id. Here, Phillips' prima facie case is not challenged.  Thus, Ensley is distinguishable.

Further, Ensley is dissimilar to the present facts in two important respects: the EEOC does not proffer evidence that Bradley C. was on medical hold, or that anyone from Decker told Bradley C. that he was on medical hold, in order for him to violate the policy in the same way that Phillips did, which caused her termination.  In other words, the EEOC does not proffer evidence that Bradley C., after being made aware that he was on medical hold by the MCD, chose to drive anyway, and was afforded the benefit of not losing his job. Instead, the evidence demonstrates that Decker discovered after the fact that Bradley C. drove in a situation where he would have likely been put on a medical hold, which is different than the case of Phillips, who was made aware on several occasions by the MCD that she was on medical hold and that she could not drive without being cleared.

Accordingly, unlike Ensley, even without considering that Bradley C. had a different supervisor than Phillips, there is no evidence to show that he received "more favorable benefits" than Phillips.   See Ensley, supra, at 1223-26 (plaintiff established that a comparable non-protected person received more favorable treatment when she proffered evidence that nonpregnant coworkers were afforded a benefit pertaining to their ability or inability to work, i.e., they were allowed to sit during shifts).  Thus, the EEOC's argument lacks merit.

13

VI.

In sum, the EEOC's arguments fail to establish a palpable defect which if corrected would result in a different disposition of the case.  Thus, reconsideration of the Court's order granting summary judgment to Decker is not warranted.


SO ORDERED.

　　　　　　　　　　　　　　　　 S/Avern Cohn
　　　　　　　　　　　　　　　　AVERN COHN
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE


Dated:  May 11, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 11, 2011, by electronic and/or ordinary mail.

　　　　　　　　　　　　　　　　 S/Johnetta M. Curry-Williams
　　　　　　　　　　　　　　　　For Julie Owens
　　　　　　　　　　　　　　　　Case Manager, (313) 234-5160